## RATHBORNE, HAIR & RIDGWAY CO. v. WILLIAMS et al.

Civil Action No. 1096.

District Court, E. D. South Carolina, Aiken Division.

March 8, 1945.

John I. Cosgrove, of Charleston, S. C., for plaintiff.

W. Brantley Harvey, of Beaufort, S. C., and Randolph Murdaugh, of Hampton, S. C., for defendants.

WYCHE, District Judge.

This is an action at law. A jury trial was waived by the parties. The complaint alleges that the plaintiff owned a lease on lands in South Carolina, known as the "Guggenheim tract", covering hardwood timber of certain dimensions, while the defendants held a lease covering hardwoods of lands in Georgia, referred to

as the "Hinesville tract"; that in August, 1942, plaintiff had cut all the hardwood timber on the "Guggenheim tract" suitable for its requirements, leaving a substantial amount of smaller hardwoods unremoved; that an agreement was then entered into by the plaintiff and the defendants, under which defendants would cut the hardwood timber remaining on the "Guggenheim tract", and the plaintiff would cut the hardwood timber on the "Hinesville tract", suitable for its requirements, and the parties would settle for any difference on a footage basis of Seven ($7) Dollars, per thousand feet, logging scale; that this agreement, or trade, was based upon the representation of the defendant L. J. Williams, Jr., that the "Hinesville tract" contained not less than 400,000 feet of hardwood timber seventeen (17) inches outside at breast height or above the root swell, suitable for plaintiff's purposes and requirements, it having been alleged that plaintiff at the time used in its operations timber not smaller than seventeen (17) inches outside at breast height; that, subsequently, a cruise of the "Hinesville tract" disclosed that it did not contain the types of hardwoods of the dimensions represented by the defendants, so that none of the "Hinesville tract" timber was cut or removed by the plaintiff. That, meanwhile, the defendants entered upon the "Guggenheim tract" and cut and removed timber of the value of Three Thousand, Eighty Seven and 96/100 ($3,087.96) Dollars.

The answer admits that a trade was made for an exchange of timber on the two tracts. It denies, however, the claim of plaintiff that at the time of the trade it was using only seventeen (17) inch timber in its operations, and further denies that any representation was made as to the quantity or size of the timber on the "Hinesville tract". It admits that no timber on the "Hinesville tract" was cut or removed by the plaintiff, and that defendants cut and removed from the "Guggenheim tract" 441,128 feet of the value of Three Thousand, Eighty Seven and 96/100 ($3,087.96) Dollars.

By way of counterclaim, defendants allege that at the time the trade was made, August, 1942, there remained uncut on the "Hinesville tract" timber of merchantable size, estimated to be 600,000 feet. That it was believed there was a like amount of timber on the "Guggenheim tract"; that defendants cut and removed from the "Guggenheim tract" timber of the value of Three Thousand, Eighty Seven and 96/100 ($3,087.96) Dollars; that the lease on the "Hinesville tract" by its terms expired on January 30, 1943, and that plaintiff knew, or should have known it; that the defendants were lead to believe that plaintiff would cut timber and remove the timber on this tract prior to that date; that plaintiff did not cut and remove the "Hinesville tract" timber as agreed, and failed to give notice of its intention not to do so in sufficient time for defendants to cut and remove it, so that the lease expired, resulting in the loss of 600,000 feet of timber of the value of Four Thousand, Two Hundred ($4,200) Dollars. By reason of the foregoing counterclaim, an offset is asserted against plaintiff for the defendants of the sum of One Thousand, One Hundred, Twelve and 10/100 ($1,112.-10) Dollars.

Plaintiff's reply to the counterclaim contains substantially a reiteration of the allegations of the complaint, with a prayer for the dismissal of the counterclaim and for judgment.

Upon the pleadings and evidence defendants concede that there is due plaintiff the sum of Three Thousand, Eighty Seven and 96/100 ($3,087.96) Dollars, with interest, unless their counterclaim or offset be sustained in whole or in part.

There is no doubt as to what the trade called for with respect to the "Guggenheim tract". As to that phase of the controversy, defendants admit that they got what they bargained for, and are liable to the plaintiff for the above stated sum, unless they can offset it. The primary question before the court, therefore, is: What was the agreement with reference to the "Hinesville tract"? Out of this phase of the controversy arises the other questions as to the kind and amount of timber on the "Hinesville tract", the timeliness of notice by plaintiff, the effort of defendants, if any, to minimize the alleged loss, and proof of the amount of any alleged loss.

The trade or exchange of the timber on the two tracts was oral. A great deal of testimony was offered by the parties in support of their respective contentions. Much of it is severely conflicting. Its truth must be determined by the credibility of the witnesses, and the probabilities resting upon rational human conduct. A

correct solution of the conflicting claims has been exceedingly difficult.

After a consideration of all the testimony and argument of counsel, I find the facts specially, and state separately, my conclusions of law, as follows:

### Findings of Fact

1. The controversy arises out of a trade or exchange of timber. Plaintiff owned a lease on lands in South Carolina, known as the "Guggenheim tract", covering hardwood timber of certain dimensions, while defendants held a lease on lands in Georgia, referred to as the "Hinesville tract", covering all hardwoods of every kind, size and description.

2. The hardwoods on both tracts were difficult to log.

3. An agreement was entered into between the plaintiff and the defendants, under which defendants would cut the hardwood timber remaining on the "Guggenheim tract", and the plaintiff would cut the merchantable hardwood timber on the "Hinesville tract", and the parties would settle for any difference on a footage basis of Seven ($7) Dollars, per thousand feet logging scale.

4. The trade or exchange of timber on the properties involved was for merchantable hardwood timber under the two timber leases on a footage basis, without any agreement between plaintiff and defendants as to sizes or quantities. That is to say, that each party was to cut timber under the two leases, and when the whole deal was over, whoever had cut the most timber would settle with the other party on the basis of Seven ($7) Dollars, a thousand feet logging scale.

5. Defendants cut and removed from the "Guggenheim tract", 441,128 feet of timber of the value of Three Thousand, Eighty Seven and 96/100 ($3,087.96) Dollars.

6. The "Hinesville tract" contained 200,000 feet of merchantable timber; plaintiff did not cut or remove any timber from the "Hinesville tract".

7. The lease on the "Hinesville tract", by its terms, expired on January 30, 1943, and plaintiff knew when the exchange agreement was made that such lease expired on that date.

8. The defendants were lead to believe that plaintiff would cut and remove the timber on the "Hinesville tract" before the expiration of the lease on January 30, 1943.

9. In September, 1942, about a month after the timber exchange agreement was made, the plaintiff had the "Hinesville tract" examined, and decided at that time that it was not going to cut and remove the timber, because of logging conditions, and because it did not believe it contained a great deal of seventeen (17) inch timber, but failed to give notice of such decision to the defendants until after January 15, 1943, when it first notified the defendants that it contended that the agreement called for only seventeen (17) inch timber on the "Hinesville tract".

10. Plaintiff notified the defendants the first week in December, 1942, that there was not enough merchantable timber on the "Hinesville tract" to warrant its logging, after which some discussion followed in an attempt to ascertain and agree as to how much merchantable timber there was on the "Hinesville tract", and with a view of arbitrating the matter.

11. Plaintiff failed to give notice of its intention not to cut the timber on the "Hinesville tract" in sufficient time for defendants to cut and remove it, so that the lease expired, resulting in the loss to the defendants of 200,000 feet of merchantable timber of the value of One Thousand, Four Hundred ($1,400) Dollars.

12. Defendants did not know until after the 15th day of January, 1943, the date of the trip of Mr. Sharpe and Mr. Taylor to the "Hinesville tract", that the plaintiff claimed that the exchange agreement referred to only seventeen (17) inch timber.

13. When the defendants were advised (after January 15, 1943) that the plaintiff was only interested in cutting and removing seventeen (17) inch timber on the "Hinesville tract", they made no effort to get an extension of their lease, or to remove the timber. I find, however, that they had a reasonable excuse for their failure to make an effort to remove the timber from the "Hinesville tract". They did not operate a saw-mill or logging outfit, and it would have been impracticable to set up a saw-mill at Hinesville to cut timber for the short time remaining under the lease. The cost of setting up a saw-mill would have probably exceeded the value of the timber cut. In addition to this, I find that the timber was located in a swamp, and it would have been nec-

4

essary to build a road to the trees in the swamp to remove the timber. There was a scarcity of labor and defendants would not have had sufficient time to remove any appreciable amount of the timber before the expiration of the lease.

14. The defendants did not have time after the notice in December, 1942, to have minimized their damages before the expiration of their lease. Most of the time between the first week in December, 1942, and January 15, 1943, was spent in attempts to arbitrate the matter, and it was not definitely known that the plaintiff would not cut and remove the timber on the "Hinesville tract" until after January 15, 1943.

### Conclusions of Law

■ 1. It is true that no recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures, but this duty to minimize damages is not arbitrarily impeded in all cases.

■ 2. The efforts which the injured party must make to avoid the consequences of the wrongful act or omission need only be reasonable under the circumstances of the particular case, his duty being limited by the rules of common sense and fair dealing; nor is he required to anticipate that wrong will be committed.

■ 3. What is reasonably required depends on the extent of the threatened injury as compared with the expense of remedying the situation, and the practical certainty of success in preventive effort.

■ 4. In order to lessen the damage the person injured is not required to take such action as might under the circumstances be imprudent or impracticable.

5. The test is, what would an ordinarily prudent man be expected to do under like circumstances?

■ 6. Under the facts and surrounding circumstances in this case, it was not the duty of the defendants to attempt to minimize their damages.

■ 7. Defendants have proved that they have been damaged in the sum of One Thousand, Four Hundred ($1,400) Dollars, and the plaintiff is entitled to judgment in the amount of Three Thousand, Eighty Seven and 96/100 ($3,087.96) Dollars, less One Thousand, Four Hundred ($1,400) Dollars, or, in the amount of One Thousand, Six Hundred, Eighty Seven and 96/100 ($1,687.96) Dollars.

Entry of appropriate order for judgment is accordingly directed.